IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

KRYSTAL M. INGRAM                                                             PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:16-CV-00210-NBB-RP

EXPERIAN INFORMATION SOLUTIONS, INC.;
TRANS UNION, LLC; EQUIFAX INFORMATION
SERVICES, LLC; UNITED STUDENT AID FUNDS, INC.;
NAVIENT SOLUTIONS, INC., fka SALLIE MAE, INC.; and
UNITED STATES DEPARTMENT OF EDUCATION                DEFENDANTS

MEMORANDUM OPINION

Presently before the court is a motion to dismiss for lack of subject matter jurisdiction filed by Defendant United States Department of Education ("USDE"). Upon due consideration of the motion, response, and applicable authority, the court is ready to rule.

Factual and Procedural Background

At the motion to dismiss stage, the court takes the factual allegations in the plaintiff's complaint as true. The plaintiff, Krystal Ingram, is a victim of identity theft. Without her knowledge or consent, the thief obtained multiple student loans in Ingram's name and later failed to make timely payments.

USDE, a provider for one of the aforementioned loans, reported the derogatory payment history to the consumer reporting agencies ("CRAs"), Experian, Equifax, and Trans Union. Consequently, Ingram's credit report reflected the loan debt, causing her credit rating to take a significant hit. As a result, she suffered "multiple adverse actions and denials of credit."

Ingram disputed the fraudulent loan debt to the CRAs on multiple occasions and requested that the debt be deleted from her credit reports. The CRAs then forwarded Ingram's

disputes to the furnishers of information, including USDE. Ingram's efforts to resolve the issue, however, proved unsuccessful.

Ingram subsequently filed the instant suit against the CRAs and furnishers of information for alleged violations under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*. Defendant USDE filed the instant motion to dismiss for lack of jurisdiction.

## Standard of Review

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the court to hear a case." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.* "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* The court may properly dismiss a claim for lack of subject matter jurisdiction if it determines that it lacks either the statutory or constitutional authority to adjudicate the claim. *Home Builders Ass'n, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

## Analysis

USDE contends that this court lacks subject matter jurisdiction because the FCRA contains no clear and unambiguous waiver of the United States' sovereign immunity. USDE additionally argues that Ingram failed to exhaust her administrative remedies.

*Sovereign Immunity*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The United States may waive its sovereign immunity by statute but such a waiver "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

"[T]he Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the statute requires." *United States v. Nordic Vill. Inc.*, 503 U .S. 30, 34 (1992)(citations omitted). Thus, a waiver of immunity cannot be implied and any ambiguities are to be resolved in the United States' favor. *Id.*

The FCRA defines "person" to include "any . . . government or governmental subdivision or agency." 15 U.S.C. §1681a(b). The statute imposes duties upon furnishers of information, like USDE, by requiring "the *person* that provided the information in dispute . . . [to] conduct an investigation . . . [and] review all relevant information provided . . . ." 15 U.S.C. §1681s-2(a)(8)(E)(emphasis added). The FCRA further provides that "any *person*" who either willfully or negligently fails to comply "with any requirement under this subchapter with respect to any consumer" may be held liable for monetary damages. *See* 15 U.S.C. §1681n; 15 U.S.C. §1681o (emphasis added).

Ingram asserts that the FCRA's definition of "person" contains an unequivocal waiver of sovereign immunity. Neither the Supreme Court nor the Fifth Circuit has determined whether the FCRA waives sovereign immunity. *See United States v. Bormes*, 133 S.Ct. 12, 20 (2012) ("We do not decide whether FCRA itself waives the Federal Government's immunity to damages."); *Bormes v. United States*, 759 F.3d 793, 795 (7th Cir. 2014) ("As far as we can tell, this is the First appellate decision on the issue.").

The court begins by noting that the only circuit court to have addressed the issue has found that the FCRA does contain an unequivocal waiver of the United States' sovereign immunity. *See Bormes*, 759 F.3d 793. In *Bormes*, the Seventh Circuit began by looking to the FCRA's definition of "person" and the remedial provisions subjecting any "person" to civil liability for any statutory violations. *Id.* at 795. The court went on to reason that "[t]he United

3

States is a government," and "[b]y authorizing monetary relief against every kind of government, the United States has waived its sovereign immunity." *Id.*

The *Bormes* court then addressed the United States' arguments in opposition. *Id.* Although the United States conceded that it was a "person" for purposes of the duties imposed by the FCRA, it nonetheless argued that it could not be held liable for monetary damages, and that it was not a "person" with respect to the statute's remedial provisions. *Id.* The court was unconvinced, explaining that "[n]othing in the FCRA allows the slightest basis for this distinction." *Id.*

The United States also argued that the statute's legislative history lacked any clear indication that Congress intended to waive the federal government's sovereign immunity. *Id.* The Seventh Circuit, however, found this argument to be unavailing because although "[i]t takes unequivocal language to waive the national government's sovereign immunity . . . this means unequivocal language in a statute, not in a committee report." *Id.* at 796 (citations omitted).

The United States also pointed out that those found liable for willful violations could be subject to punitive damages and/or criminal penalties under the FCRA. *Id.* According to the United States, Congress absolutely could not have intended such consequences. *Id.* The Seventh Circuit rejected this argument concluding that if the statute, as written, "creates excessive liablity . . . then the solution is an amendment, not judicial rewriting." *Id.* The court reasoned that such consequences were "not so outlandish that we should read [it] to mean something other than what it says." *Id.*

In the instant case, USDE makes very similar, if not identical, arguments as did the United States in *Bormes*. For the same reasons as those articulated in *Bormes*, the court finds USDE's arguments to be unconvincing.

4

While the court is persuaded by the Seventh Circuit's analysis on its own, it also finds a case from this circuit to be instructive on the issue. *See Moore v. U.S. Dept. of Agriculture*, 55 F.3d 991(5th Cir. 1995). In *Moore*, the issue before the Fifth Circuit was whether the Equal Credit Opportunity Act ("ECOA") contains a waiver of the federal government's sovereign immunity. *Moore*, 55 F.3d at 993. To decide the issue, the court distinguished the ECOA from another statute, the Truth in Lending Act ("TILA"), because both statutes are a part of a broader statutory scheme known as the Federal Consumer Credit Protection Act. *Id.* at 994.

The Fifth Circuit noted that both the ECOA and the TILA define "person" to include any "government or governmental subdivision or agency." *Id.* Congress, however, explicitly preserved the United States' sovereign immunity with respect to claims under the TILA. *Id.* The ECOA was enacted after the TILA and contains no such preservation of immunity. *Id.* Consequently, the court reasoned, "TILA indicates that Congress intended 'government or governmental subdivision or agency' to include the United States," and further explained that "otherwise [Congress] would not have specifically preserved the United States' immunity unless it believed that such immunity had been previously waived." *Id.* Thus, the court concluded that "the plain language of the ECOA unequivocally expressed Congress' intentions: governmental entities are liable under the Act." *Id.*

The court finds *Moore* to be particularly instructive in the instant case because the FCRA, like the ECOA and TILA, is also a part of the Federal Consumer Credit Protection Act. As already discussed, the FCRA, like the ECOA and TILA, defines "person" to include any "government or governmental subdivision or agency." Moreover, the FCRA, like the ECOA, does not contain an explicit preservation of immunity as found in the TILA. And also like the ECOA, the FCRA was passed after the TILA.

For these reasons, the court is persuaded that, if presented with the issue, the Fifth Circuit would likely reach the same result as it did in *Moore*. The court also notes that another district court has adopted the reasoning in *Moore* in addressing this precise question. *See Talley v. U.S. Dept. of Agriculture*, 2007 WL 2028537, *2 (N.D. Ill. July 12, 2007) (relying on *Moore* and concluding that "the term 'government or governmental subdivision or agency' in the FCRA is an express waiver of the United States' sovereign immunity.").

In sum, following the analysis in *Bormes* and *Moore*, the court is convinced that the FCRA contains an unequivocal waiver of the United States' sovereign immunity. Accordingly, the court finds USDE's arguments to the contrary to be without merit.

*Administrative Remedies*

It is well-settled that a plaintiff's failure to exhaust administrative remedies deprives the court of jurisdiction. *See Lentoben v. Shalala*, 43 F.3d 669 (5th Cir. 1994); *Paul v. Shalala*, 29 F.3d 208 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991); *Dominick v. Bowen*, 861 F.2d 1330 (5th Cir. 1988). Relying on this principle, USDE contends that this court lacks jurisdiction because, it argues, Ingram failed to exhaust her administrative remedies. In so arguing, however, USDE cites the Higher Education Act ("HEA"), 34 C.F.R. §668 *et seq.*, and not the FCRA, which is the only applicable statute in the instant case.

According to USDE, Ingram was required to follow the administrative process laid out by the HEA to seek a discharge of the fraudulently obtained loan before commencing litigation. If Ingram were actually seeking a discharge of the loan, USDE's argument would likely be meritorious. Ingram, however, does not now nor has she ever sought discharge because the loans are not her responsibility as they were fraudulently obtained.

In the instant action, Ingram seeks only monetary damages for the defendants' alleged violations under the FCRA. USDE has failed to point to any administrative remedies available under the FCRA that Ingram could have or should have exhausted. Accordingly, the court finds USDE's argument to be without merit.

Conclusion

For the foregoing reasons, the court finds that Defendant USDE's motion to dismiss for lack of jurisdiction is not well-taken and should be denied. A separate order in accord with this opinion shall issue this day.

This, the 8th day of June, 2017.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT COURT**