IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

KRYSTAL INGRAM                                                                PLAINTIFF

V.                                                  CIVIL ACTION NO. 3:16-CV-00210-NBB-RP

EXPERIAN INFORMATION SOLUTIONS, INC.;
UNITED STUDENT AID FUNDS, INC.;
NAVIENT SOLUTIONS, fka SALLIE MAE, INC.;
and UNITED STATES DEPARTMENT OF EDUCATION            DEFENDANTS

## MEMORANDUM OPINION

Presently before the court is the defendants' joint motion to enforce settlement agreements or, alternatively, for judgment on the pleadings. Upon due consideration of the motion, response, exhibits and applicable authority, the court is ready to rule.

### Factual and Procedural Background

The plaintiff, Krystal Ingram, alleges that she is the victim of identity theft. Ingram asserts that, without her knowledge or consent, the thief obtained multiple student loans in her name and later failed to make timely payments.

The providers of these loans reported the derogatory payment history to the consumer reporting agencies ("CRAs"), Experian, Equifax, and Trans Union. Consequently, Ingram's credit report reflected the loan debt, causing her credit rating to take a significant hit. As a result, she allegedly suffered "multiple adverse actions and denials of credit."

Ingram disputed the alleged fraudulent loan debt to the CRAs on numerous occasions and requested that the debt be deleted from her credit reports. The CRAs then forwarded Ingram's disputes to the furnishers of information, i.e. the loan providers. Ingram subsequently filed the

instant suit against the CRAs and furnishers of information for alleged violations under the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*.

During discovery, Defendant Experian produced to Ingram the records it subpoenaed from the schools for which the aforementioned student loans were obtained. Ingram subsequently began settlement negotiations with Defendants. The following recitation of events is undisputed:

*Experian*

On August 23, 2017, Will Rooks, counsel for Experian, e-mailed Christopher Kittell, counsel for Ingram, and stated "[t]hank you for your telephone call earlier today to convey Plaintiff's settlement offer." Rooks continued "I have conveyed your offer to my client," and "Experian will waive any claims it may have against Plaintiff if she will dismiss all claims against Experian." Rooks sent a follow-up e-mail to clarify that the aforementioned "dismissal must be with prejudice."

On August 24, 2017, Kittell responded to Rooks, saying "now that Experian has agreed to waive any claims against the Plaintiff, this is acceptable. Please send the settlement agreement and credit report at your convenience." Later that day, Rooks e-mailed Kittell and asked "will you agree to file a stipulation of dismissal of Experian with prejudice once you receive our notice of withdrawal of our deposition subpoena?" Kittell responded "that's fine."

The following day, August 25, 2017, Rooks sent Kittell Experian's withdrawal of the deposition subpoena. Then, on August 28, 2017, Rooks sent Kittell the settlement agreement, release and an updated consumer disclosure.

*United States Department of Education*

On August 23, 2017, Kittell called Assistant United States Attorney Stuart Davis and offered to voluntarily dismiss Ingram's claims against USDOE in exchange for a promise from USODE that it would not pursue any counterclaims it may have against Ingram. Davis responded to Kittell's offer on August 25, 2017, and stated that he had "run [Ingram's] voluntary dismissal proposal by the appropriate supervisors in [his] office," and that "[USDOE] will agree to a dismissal and . . . will agree not to file a civil counterclaim against [] Ingram."

*Navient Solutions and United Student Aid Funds*

On August 23, 2017, Kittell called Blythe Lollar, counsel for Navient and USA Funds, and extended a settlement offer in which Ingram would voluntarily dismiss her claims against Lollar's clients provided that they agreed not to pursue any claims against her. Later that day, Lollar e-mailed Kittell and advised that she had spoken with her clients, and that they "each agree not to pursue any potential claims against [] Ingram . . . provided [she] dismisses all claims against them with prejudice." The following day, August 24, 2017, Kittell responded "Thanks. I will draft a stipulation of dismissal for your review."

Approximately a week after the parties agreed to settle the case, but before the parties had signed any written document, Ingram attempted to rescind her settlement offers. On August 31, 2017, Kittell wrote "[a]gainst my advice, the Plaintiff has rescinded my authority to dismiss her claims against the remaining defendants." Defendants now move the court to enforce the aforementioned settlement agreements.

<u>Analysis</u>

"A district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir.

1994). In cases arising under a federal statute, like the one here, courts employ federal law in determining whether a settlement agreement exists and is enforceable. *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). "Federal law requires that a settlement [] be entered into 'voluntarily and knowingly' by the plaintiff." *Id.* (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974); *Mosley v. St. Louis Southwestern Railway*, 634 F.2d 942, 946 n.5 (5th Cir. 1981)).

Further, and quite relevant in this case, federal law does not require settlement agreements to be reduced to writing. *Id. See also Quesada v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012); *E.E.O.C. v. Philip Services Corp.*, 635 F.3d 164, 167 (5th Cir. 2011). Moreover, "[a]bsent a factual basis rendering it invalid, an oral agreement to settle a federal claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Fulgence*, 622 F.2d at 1209.

In moving to enforce, Defendants contend that the parties voluntarily and knowingly entered into binding and enforceable settlement agreements. Defendants further opine that the terms of the agreements are clear and unambiguous: Ingram agreed to dismiss her claims against the remaining defendants and Defendants agreed not to pursue any claims against Ingram. Defendants additionally note that they took overt action pursuant to the settlement by withdrawing deposition subpoenas.

The record, discussed in relevant part in the previous section, supports Defendants' argument. Importantly, Ingram concedes that she extended an offer to each defendant whereby she would dismiss her claims with prejudice in exchange for Defendants' promise to waive any claims they may have against her. Ingram also does not dispute that Defendants accepted her offer. Ingram further admits that she did not attempt to rescind, or repudiate, until *after*

Defendants had accepted her offer and agreements had been reached. Yet, without any citation to authority, Ingram argues that the settlement agreements cannot be enforced because they were not reduced to a writing signed by her and because she rescinded her counsel's authority to settle prior to the entry of judgment.

The Fifth Circuit, however, has consistently rejected such arguments. *See United States v. City of New Orleans*, 731 F.3d 434 (5th Cir. 2013); *Quesada*, 701 F.3d 1080; *Daftary v. Metropolitan Life Ins. Co.*, 136 F.3d 137 (5th Cir. 1998); *Fulgence*, 36 F.3d 447. In fact, when a party "who has previously authorized settlement changes [her] mind . . . that party remains bound by the terms of the agreement." *Fulgence*, 662 F.2d at 1209 (citations omitted). Further, "a settlement agreement, once entered into, cannot be repudiated by either party," and "it is irrelevant that [the plaintiff] tried to revoke [her] consent prior to entry of judgment." *City of New Orleans*, 731 F.3d at 439; *see also Weaver v. World Finance Corp. of Texas*, 2010 WL 1904561 (N.D. Tex. May 12, 2010) (enforcing settlement "where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement.")

The court additionally notes that it is undisputed that Kittell had authority to settle the instant litigation on Ingram's behalf at all relevant times. The uncontested recitation of facts confirms that Kittell was authorized to settle and dismiss Ingram's claims until she rescinded his authority on August 31, 2017, *after* the settlement agreements at issue had been reached. Moreover, "an attorney of record is presumed to have authority to compromise and settle litigation of his client." *Quesada*, 701 F.3d at 1083-84; *see also Demilia v. United Student Aid Funds*, 2001 WL 1543491 (E.D. La. Dec. 3, 2001).

For these reasons, the court finds that the parties entered into binding and enforceable settlement agreements. The court further finds the terms of the agreements to be quite clear in

that Ingram must dismiss her claims against Defendants with prejudice and, in return, Defendants shall not pursue any claims against Ingram in connection with the instant litigation. Because the court finds Defendants' motion to enforce settlement to be meritorious, it declines to address Defendants' alternative motion for judgment on the pleadings.

Conclusion

Based on the foregoing discussion, the court finds that the defendants' joint motion to enforce settlement agreements is well-taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 12th day of February, 2018.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**